30 .So.2d 434

**STATE v. MORGAN.**

No. 38215.

March 17, 1947.

Rehearing Denied April 21, 1947.

James D. Womack, of Baton Rouge, Ory Dupont, of Plaquemine, and Leslie A. Fitch, Jr. of Baton Rouge, for defendant and appellant.

Fred S. LeBlanc, Atty. Gen., and M. E. Culligan, Asst. Atty. Gen., and Dewey J. Sanchez, Dist. Atty., and B. B. Croom, Asst. Dist. Atty., both of Baton Rouge, for appellee.

O'NIELL, Chief Justice.

The defendant was indicted for the crime of murder, and was tried twice, the first trial resulting in a mistrial, and the second in a conviction for manslaughter. He was sentenced to imprisonment in the penitentiary for the term of seven years and is appealing from the conviction and sentence.

The victim of the homicide was the defendant's mother-in-law. She was shot during a shot-gun duel between her husband and the defendant. He urged two defenses on the trial of the case, the first defense being that the shot which killed his mother-in-law was fired from the gun of her husband, the second defense being that if the fatal shot came from the defendant's gun he was firing in defense of his life, being attacked first by his father-in-law, and was therefore justified, under the law of self-defense.

The record contains sixteen bills of exception. The most important bill is the one which was reserved to the refusal of the judge to allow the defendant to explain why he brought his shotgun in his automobile when he came to his father-in-law's home in search of his wife. The theory advanced by the State was that the defendant had brought the gun for the purpose of carrying out a threat to kill his wife. In support of that theory the State offered evidence, over the defendant's objection, to prove that on the night before the killing the defendant and his wife had a quarrel which ended in her leaving her home, and in his threatening to kill her. In contradiction or rebuttal of the State's theory, as to why the defendant brought his shotgun in his automobile when he went in search of his wife, the defendant proposed to prove, substantially, that it was to protect himself against violence on the part of his wife's father that he carried the shotgun in his automobile when he went to his father-in-law's house in search of his wife. The defendant's attorney therefore asked him, when he was testifying as a witness in the case, why he had brought the shotgun, and, anticipating the answer, the prosecuting attorney objected and the jury was withdrawn from the court room. The defendant then testified, in the absence of the jury, that his reason for bringing the shotgun was that his mother-in-law had told him, four or five years before the fatal difficulty, that her husband had tried to kill her and was prevented from doing so only by the intervention of her sons. The district attorney's objection to the testimony was that the alleged statement to the defendant by his mother-in-law was hearsay evidence and that the incident said to have been related by her was too remote from the time of the fatal difficulty. The judge sustained the objection.

Our opinion is that the defendant's testimony was admissible for the purpose of contradicting the evidence which the State had introduced to prove the purpose for which the defendant brought his shotgun in his automobile when he went to his father-in-law's house in search of his wife. Certainly the evidence was not objectionable as being hearsay evidence, because it was not offered for the purpose of proving the truth of what the mother-in-law had told the defendant regarding the violent disposition of her husband, but was offered merely to prove the fact that she had made the statement to the defendant. Whether the defendant's admission that the statement made to him by his mother-in-law was made four or five years before the time of the homicide made the evidence too remote to be of any importance in this case was a matter for the jury to determine.

Evidence showing preparation for the commission of a crime is always admissible for the State; and evidence in explanation of such acts of preparation is always admissible for the defendant. 1 Marr, Criminal Jurisprudence in Louisiana (2d ed. 1923) 97; State v. Claire, 1889, 41

La.Ann. 191, 6 So. 129; State v. Stockett, 1905, 115 La. 743, 39 So. 1000; State v. Werner, 1911, 128 La. 1, 54 So. 402; State v. Bankston, 1928, 165 La. 1082, 116 So. 565; 1 Wharton, Criminal Evidence (11th ed. 1935) 352, sec. 277.

It is true that in State v. Werner [128 La. 1, 54 So. 404] the court concluded, from facts which are not pertinent to the present case, that the exclusion of the defendant's explanation of his having been armed was not sufficiently prejudicial to justify setting aside the verdict; but even in that case the court took occasion to affirm the general rule, thus:

"We think the evidence should have been admitted; for, certainly, it was relevant for defendant to offer some other reason, if he could, for his having been armed, than that imputed to him of intending to use the weapon upon his wife or his brother-in-law."

██ Another bill of exception which we consider important was reserved to the overruling of an objection made by the defendant's attorney to the introduction in evidence of two gruesome photographs of the dead body of the victim of the homicide. Our opinion of the photographs is that they do present a gruesome or ghastly spectacle, which might well have disturbed the composure of the members of the jury in their deliberations. There is no need for going into details on that subject. It is sufficient to say that the introduction of the photographs in evidence was not at all

necessary or relevant to any fact at issue at the time when the photographs were offered in evidence. In offering them the district attorney stated, in response to the defendant's objection, that he offered them "for the purpose of proving the corpus delicti and for the purpose of proving the nature, scope and extent of the wound received by the deceased". The corpus delicti had been proved already by the testimony of the coroner and by the introduction in evidence of the proces verbal of the coroner's inquest. Also the location and the nature and effect of the wounds on the body of the deceased had been described in detail by the coroner in his testimony, and there was no dispute on that subject at the time when the district attorney offered the gruesome photographs in evidence. The law on the subject of the admissibility of photographs in evidence in a criminal prosecution is stated in State v. Johnson, 1941, 198 La. 195, 204, 205, 3 So.2d 556, 559,—thus:

"Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible. Wharton, Criminal evidence, 11th Ed., Vol. 2, sec. 773, p. 1321."

██ The converse of that proposition is that if a gruesome photograph is not at all necessary or material evidence in a criminal prosecution it should be excluded if it

may have a tendency to cause an undue influence upon the jury. Therefore the objectionable photographs in this case should not be introduced in evidence if and when the case is tried again, unless the State shows some necessary purpose for the introduction of the photographs in evidence.

The only remaining bill of exception which we consider important is the one which was reserved to the overruling of a supplemental motion for a new trial. The motion was founded upon so-called newly-discovered evidence. There is no necessity, however, for our passing upon this bill of exception now, since we have concluded to remand the case for a new trial. On the new trial the defendant will have an opportunity, of course, to introduce his so-called newly-discovered evidence.

The remaining thirteen bills of exception relate to objections and rulings which are not apt to arise in another trial of the case, and which therefore need not be considered.

The verdict and sentence appealed from are annulled and the case is ordered remanded to the district court for a new trial.

McCALEB, J., dissents from the ruling concerning the photographs, but is in agreement as to the other bills considered.

HAWTHORNE, J., dissents.

HAWTHORNE, Justice (dissenting).

The majority opinion in this case annuls the verdict and sentence and remands the case to the district court for a new trial, on the ground that two of the 16 bills of exception reserved during the course of the trial disclose reversible error. I cannot agree with the majority opinion that these two bills have merit and therefore respectfully dissent.

The facts and circumstances surrounding the first bill discussed in the majority opinion are as follows: While the defendant was a witness in his own behalf, his counsel propounded to him this question: "Freddie, why did you take that gun out to the Babin home with you that day?" Upon objection to this question by the State, the jury was retired, and during its absence the defendant explained in answer to the question that Mrs. Babin, the deceased, told him four or five years before that her husband started to shoot her once, and that her sons had to take the gun away from him to keep him from shooting her. Thereupon the trial judge sustained the State's objection on the ground that the testimony sought to be elicited from the defendant was hearsay and too remote.

I am of the opinion that the trial judge properly sustained the objection.

The answer of the defendant to the question propounded, given in the absence of the jury, shows that the evidence which he sought to introduce was a statement made by the deceased to him *four or five years* prior to the homicide with reference to a difficulty which the deceased had with her husband at that time.

The majority opinion, in holding that the evidence should have been admitted for the reason that it was relevant for defendant to offer some explanation for his having been armed other than that imputed to him by the State, says that the rule is: "Evidence showing preparation for the commission of a crime is always admissible for the State; and evidence in explanation of such acts of preparation is always admissible for the defendant." Numerous cases and textbook writers are cited in support thereof.

As far as I can ascertain, the courts of no state have refused to recognize this rule. However, I do not think that, when the defendant seeks to introduce evidence in explanation of his acts of preparation, the rule contemplates or warrants the suspension of the ordinary rules of evidence which render evidence incompetent or inadmissible because it is irrelevant or hearsay, etc.

The majority opinion holds that whether the statement made four or five years before the time of the homicide was too remote to be of any importance in this case was a matter for the jury to determine, or, stated somewhat differently, that the weight to be given this statement was a question for the jury, and its remoteness did not affect its admissibility.

20 Am.Jur., "Evidence", Section 249, page 243, gives the rule with reference to the admissibility of remote evidence as follows:

"Evidence which is otherwise competent may relate to facts too remote in point of time or to matters too far removed from the scene of a transaction to be admissible. *The admissibility of such evidence is a matter resting largely in the discretion of the trial court."* (Italics ours.)

This rule is stated in I Wharton's Criminal Evidence, (11th ed.), Section 370, page 587, thus:

"No exact limitation as to time can be established in which an act must have occurred in order to give it evidential value. Generally speaking, the question of remoteness to authorize the exclusion of testimony should depend upon all of the considerations of the case, including time, the character of the facts sought to be proved, and all of the surrounding circumstances which, in the opinion of the trial court, ought to be considered in the determination of the matter at issue. Evidence may be relevant, yet so remote in time as to be of little or no value, and hence, properly excluded. On the other hand, the passage of time may affect only the weight of evidence, and not its significance. *The determination of the question, therefore, must rest in the sound discretion of the trial court."* (Italics ours.)

The rule thus stated with reference to the admissibility of remote evidence clearly shows that its remoteness affects its admissibility, and that the question of its admissibility is for the trial judge, not the jury. Inasmuch as the evidence which the defendant sought to introduce related to a con-

versation between him and the deceased four or five years before, in which it was divulged that threats had been made against the deceased by her husband, it was unquestionably too remote to be of any value to explain why he took the gun to the Babin home on the day of the homicide. In any event, the rule is clear that the admissibility of remote evidence is a matter within the discretion of the trial judge. Unless it is shown that the judge abused his discretion and thereby prejudiced the defendant, the ruling of the trial judge should be sustained. Undoubtedly, there was no such abuse of discretion in the instant case, and, in my opinion, the bill has no merit.

The second bill discussed in the majority opinion was taken to a ruling of the trial judge permitting the State to introduce in evidence certain photographs over the objection of the defendant. These photographs were offered by the State for the purpose of proving the corpus delicti and the nature, scope, and extent of the wounds received by the deceased.

It is the opinion of the majority of the court that these photographs presented a a gruesome and ghastly spectacle which might well have disturbed the composure of the jurors in their deliberations, and that the photographs were not at all necessary or relevant at the time they were offered in evidence, since the corpus delicti had already been proved by the testimony of the coroner and by the introduction in evidence of the proces verbal of the coroner's inquest, and, further, since the location, na-

ture, and effect of the wounds on the body of the deceased had been described in detail by the coroner in his testimony.

2 Wharton's Criminal Evidence (11th Ed.), Section 774, page 1323, gives the rule which I think applicable to this case as follows:

"* * * Thus, in prosecutions for homicide, photographs which portray the body of the deceased for the purpose of showing the manner of death and the location, severity, and number of wounds are admissible. * * * Photographs may also be admitted * * * to establish the corpus delicti of the crime charged * * * and to corroborate testimony."

Proof of the corpus delicti is an issue in every homicide case, and must be made by the prosecution. Even though the coroner had testified as to the location, nature, and effect of the wounds on the body of the deceased, these photographs merely corroborated his testimony and were admissible for such purpose.

In State v. Johnson, 198 La. 195, 3 So.2d 556, the case cited and quoted from in the majority opinion as stating the law on the subject of the admissibility of photographs in evidence in a criminal prosecution, this court held that photographs of the deceased were properly admitted in evidence, which photographs were offered by the State in connection with the testimony of the deputy coroner, notwithstanding the fact that one of the objections of the defendant was that the deputy coroner could describe to the

satisfaction of the jury the wounds of the deceased from which he died, and that the admission of the photographs in evidence would tend to create a feeling of horror in the minds of jurors which would be highly prejudicial to the defendant.

The mere fact that the photographs of the body of the deceased offered in evidence in the instant case were gruesome or ghastly, and due to this fact might have been prejudicial, does not affect their admissibility in evidence, as pointed out in Scott on Photographic Evidence, Section 661, page 577, as follows:

"A photograph of the wounds of the victim of a crime may be prejudicial because of its gruesome appearance, but nevertheless it is admissible when material to some issue in the case and when properly verified; if the rule were otherwise, the more horrible a crime the more hampered would be the prosecution of those who had contributed to the details of its horror.   * * *"

For these reasons I respectfully dissent.